Gregory K. Zeuthen – OSB No. 843961
**GREGORY K. ZEUTHEN, ATTORNEY AT LAW, P.C.**
210 SW Morrison Street, Suite 400
Portland, Oregon 97204
Phone: (503) 227-7257
Fax: (503) 228-1556
*gkz@zlawoffice.com*

Jarrett L. Ellzey — Texas Bar No. 24040864
*(Pro Hac Vice Pending)*
W. Craft Hughes — Texas Bar No. 24046123
*(Pro Hac Vice Pending)*
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*jarrett@hughesellzey.com*
*craft@hugheseellzey.com*

John P. Kristensen – Cal. Bar No. 224132
*(Pro Hac Vice Pending)*
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Ste. 200
Los Angeles, CA 90066
Phone: (310) 507-7924
Fax: (310) 507-7906
*john@kristensenlaw.com*

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ERIK MATTSON, individually and on behalf of all others similarly situated,<br>Plaintiff | Case No.<br><br>**CLASS ACTION COMPLAINT** |
| v. | |
| QUICKEN LOANS, INC.; NEW PENN FINANCIAL, LLC; VISION QUEST LENDING; and UNITED MORTGAGE CORP.<br><br>Defendants | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

ERIK MATTSON ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against defendants QUICKEN LOAN, INC., NEW PENN FINANCIAL, LLC, VISION QUEST LENDING, and UNITED MORTGAGE CORP. ("Defendants") to stop Defendants' practice of making unsolicited telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

### INTRODUCTION

1.      Defendants are mortgage companies. In an effort to solicit potential customers, Defendants recruited a call center agent who began making telephone calls, *en masse*, to consumers across the country. On information and belief, Defendants and or their agents purchase "leads" containing consumers' contact information and create electronic databases from which Defendants make automated calls.

2.      Defendants conducted (and continue to conduct) wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.      The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call Registry and an

award of statutory damages to the members of the Class under the TCPA up to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

4.      By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

5.      Plaintiff brings this class action against Defendants to secure redress because Defendants willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' telephones through the use of an auto-dialer and/or artificial or pre-recorded voice message.

## PARTIES

6.      Plaintiff ERIK MATTSON is a natural person and citizen of Portland, Oregon.

7.      Defendant QUICKEN LOANS, INC. is a corporation organized under the laws of the State of Michigan. Defendant maintains a head office in Detroit, Michigan. Defendant may be served with process by serving its registered agent, The Corporation Company, 40600 Ann Arbor Rd. E., Ste. 201, Plymouth, Michigan, 48170.

8.      Defendant NEW PENN FINANCIAL, LLC, is a limited liability company organized under the laws of the State of Delaware.  Defendant maintains a head office in Plymouth Meeting, Pennsylvania. Defendant may be served with process by serving its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

9.      Defendant VISION QUEST LENDING is a corporation organized under the laws of

the State of California. Defendant maintains a head office in Irvine, California. Defendant may be served with process by serving its registered agent, Michelle Nguyen, 2860 Michelle Dr., Ste. 140, Irvine, CA, 92606.

10.    Defendant UNITED MORTGAGE CORP. is a corporation organized under the laws of the State of New York. Defendant maintains a head office in Melville, New York. Defendant may be served with process by serving its Chief Executive Officer, Mark Rosenbloom, 25 Melville Park Rd., Ste. 100, Melville, New York, 11747.

11.    Plaintiff does not yet know the identity of Defendants' employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. They are named tentatively, as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants.

12.    Whenever in this complaint it is alleged that Defendants committed any act or

omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

13.    At all times herein mentioned, each and every defendant herein was the owner, agent, servant, joint venture, alter ego and employee, each of the other and each was acting within the course and scope of his or him ownership, agency, service, joint venture and employment.

14.    At all times mentioned herein, each and every defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other defendants.

## JURISDICTION & VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

16.    The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

18.    Defendants are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this

District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

19.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.    In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

20.    Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

21.    In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

22.     As of October 16, 2013, unless the recipient has given <u>prior express written</u> <u>consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

23.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  *In re Rules and Regulations Implementing the* *Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for*

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

*Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

24.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## COMMON FACTUAL ALLEGATIONS

25.     Defendants are mortgage companies. In an effort to solicit potential customers, Defendants recruited a third-party call center to contact consumers who never inquired about mortgage products through any medium.  Utilizing a sophisticated automated voice response system, the call center contacts consumers and attempts to illicit a positive response from each when the computer asks whether that individual is interested in receiving information about mortgages.  The computer then immediately forwards the caller's information as a positive hit to Defendants, who then place a subsequent call to that consumer for the purpose of making a sales pitch.  Defendants believe they have circumvented the TCPA and have legal consent to place the calls to these individuals.  The problem is, on information and belief, the call center forwards contact information for any live body who answers the call and communicates with the automated system, regardless of whether that person gave valid consent to receive subsequent marketing calls from Defendants.  Furthermore, there is no question the initial calls from the call centesr are placed in violation of the TCPA.  Therefore, the call centers (agents) are also liable for violating the TCPA, as are the principals (Defendants).

26.     In Defendant's overzealous attempt to market its services, they placed (and continue to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Worse yet, Defendant placed (and continues

to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry.  Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

27.    Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients, and knowingly continue to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## STANDING

28.    Plaintiff has standing to bring this suit on behalf of herself and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendants; and (c) is likely to be redressed by a favorable judicial decision.  *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### A.    INJURY IN FACT

29.    Plaintiff's injury must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.  *(Id.)*

30.    For an injury to be concrete it must be a de facto injury, meaning it actually exists. In the present case, Plaintiff took the affirmative step of enrolling himself on the National Do-Not-Call Registry for the purpose of preventing marketing calls to his telephone.  Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiff.  *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).  All three of these injuries are present in this case.

31.    Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.  *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

32.    For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way.  *See Spokeo* at 7.  In the instant case, Defendants placed calls to Plaintiff's phone, and left messages on Plaintiff's phone.  It was Plaintiff's personal privacy and peace that Defendants invaded by placing the calls to his phone.  Furthermore, Plaintiff is the person who pays for the phone, and is the regular carrier and user of the phone.  All of these injuries are particular to Plaintiff.

**B.    TRACEABLE TO THE CONDUCT OF DEFENDANT**

33.    Plaintiff must allege at the pleading stage of the case facts to show that his injury is traceable to the conduct of Defendants.  In this case, Plaintiff satisfies this requirement by alleging that Defendants, and/or agent of Defendants on behalf of Defendants, placed illegal calls to Plaintiff's phone.

**C.    INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION**

34.    The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In

the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

35.    Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016), Plaintiff has standing to sue Defendants on the stated claims.

## FACTS SPECIFIC TO PLAINTIFF ERIK MATTSON

36.    Over two years ago, on or about April 4, 2015, Plaintiff registered his cellular phone number ending in 1930 with the National Do Not Call Registry.

37.    Beginning in 2016, Plaintiff began receiving automated calls on his cellular telephone from various numbers offering refinanced mortgage products. Plaintiff blocked several numbers and filed complaints with the Federal Trade Commission, but continued to receive calls from new numbers.

38.    On September 1, 2017, Plaintiff received another automated call about refinancing a mortgage from the phone number (971) 206-9522. Plaintiff called the number back and was greeted by what appeared to be a live representative, but turned out to be a deceptive automated system.

39.    Plaintiff asked the automated system questions to which he received answers that did not logically follow his questions.

40.    Plaintiff called back 17 times trying to reach a live representative, but rather than connect Plaintiff to someone he could speak to, the automated system would abruptly redirect the conversation to a sales pitch or series of questions.

41.    Plaintiff, still uncertain if he had been connected to a live representative or was speaking with an automated system, began answering questions with nonsensical answers to try to determine whether it was an actual person or a recorded system. When asked what his name was, Plaintiff answered, "Twelve." The system continued with its questions and did not appear to recognize that he was answering nonsensically.

42.    The system then asked if it could have mortgage brokers call Plaintiff, to which Plaintiff replied, "No." The system then repeated the question, to which Plaintiff said, "Two." After this response, the call abruptly ended.

43.    Shortly after completion of this call, Plaintiff began receiving a flood of calls and text messages from Defendants offering mortgage refinancing.

44.    Plaintiff received all calls described above on his cellular telephone assigned a number ending in 1930.

45.    At the time of the calls, Plaintiff did not have a business relationship with Defendants.

46.    Plaintiff was annoyed by the calls and wanted Defendants to stop calling, yet Defendants continued to call.

47.    It was obvious to Plaintiff that the Defendants were engaged in a marketing campaign wherein the Defendants contacted a large number of consumers.

48.    Plaintiff did not give consent to receive any of these calls and made significant efforts to stop the calls and convey to callers that he had not given consent to receive calls.

49.     Plaintiff understood the purpose of Defendants' calls was to solicit business from Plaintiff.

50.     The telephone number Defendants called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

51.     Plaintiff is the regular carrier and exclusive user of the telephone assigned the number ending in 1930.

52.     Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

53.     Plaintiff did not provide Defendants with prior express consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

54.     All calls Defendants made to Plaintiff violate 47 U.S.C. § 227(b)(1).

55.     Plaintiff has reason to believe Defendants called, and continue to call, thousands of telephone customers listed on the DNC to market their products and services.

56.     Plaintiff's overriding interest is ensuring Defendants cease all illegal telemarketing practices and compensate all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

57.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

58.    On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendants to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

### D.    CLASS ALLEGATIONS

59.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following class defined as follows (the "Class"):

> **"DNC[2] Class":** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendants within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendants have no record of consent to place such calls.

60.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendants' counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

61.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

62.    Plaintiff reserves the right to expand the Class definition to seek recovery on

---

[2] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

behalf of additional persons as warranted as facts are learned in further investigation and discovery.

63.    Plaintiff and members of the Class were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC.

E.    NUMEROSITY

64.    The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

65.    On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendants' records.

F.    COMMONALITY AND PREDOMINANCE

66.    There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

67.    Common questions for the Class include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or their agents with prior express written consent to receive such phone calls after October 16, 2013;

(c)    Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(d)     Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

(e)     Whether Defendant systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a phone service; and

(f)     Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

## G.    TYPICALITY

68.     Plaintiff's claims are typical of the claims of the other members of the Class.

69.     Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

## H.    ADEQUATE REPRESENTATION

70.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

71.     Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

## I.    POLICIES GENERALLY APPLICABLE TO THE CLASS

72.     This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

73.     Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**J.      SUPERIORITY**

74.      This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

75.      The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

76.      Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

77.      Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

78.      By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**CAUSE OF ACTION**
**VIOLATION OF TCPA, 47 U.S.C. § 227**
**("DNC Claim" On behalf of Plaintiff and the Class)**

79.      Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

80.      47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the

---

regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

81.    The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

82.    47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

83.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

84.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is

maintained by the federal government. These consumers requested to not receive calls from Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

85.     Defendants made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendants do not have a record of consent to place telemarketing calls to them.

86.     Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

87.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

88.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## ATTORNEY'S FEES

89.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

90.     Plaintiff is entitled to recover reasonable attorney fees and requests the attorneys'
fees be awarded.

## JURY DEMAND

91.     Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues
triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following
relief:

(a)     An order certifying the Class as defined above, appointing Plaintiff as the
        representative of the Class, and appointing his counsel, HUGHES ELLZEY,
        LLP as lead Class Counsel;

(b)     An award of actual and statutory damages for each and every negligent
        violation to each member of the Class pursuant to 47 U.S.C. §
        227(b)(3)(B);

(c)     An award of actual and statutory damages for each and every knowing
        and/or willful violation to each member of the Class pursuant to 47 U.S.C
        § 227(b)(3)(B);

(d)     An injunction requiring Defendants and Defendants' agents to cease all
        unsolicited telephone calling activities, and otherwise protecting the
        interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

(e)     Pre-judgment and post-judgment interest on monetary relief;

(f)     An award of reasonable attorneys' fees and court costs; and

(g)    All other and further relief as the Court deems necessary, just, and proper.


Dated:  November 16, 2017


                                    Respectfully Submitted,

                            /s/ Gregory K. Zeuthen
                            Gregory K. Zeuthen - gkz@zlawoffice.com
                            Oregon Bar No. _____
                            GREGORY K. ZEUTHEN, ATTORNEY AT LAW, P.C.
                            210 SW Morrison Street, Suite 400
                            Portland, Oregon 97204
                            Phone: (503) 227-7257
                            Fax: (503) 228-1556


                            /s/ Jarrett Ellzey
                            Jarrett L. Ellzey—jarrett@hughesellzey.com
                            Texas Bar No. 24040864 (Pro Hac Vice Pending)
                            W. Craft Hughes—craft@hughesellzey.com
                            Texas Bar No. 24046123 (Pro Hac Vice Pending)
                            HUGHES ELLZEY, LLP
                            2700 Post Oak Blvd., Ste. 1120
                            Galleria Tower I
                            Houston, TX 77056
                            Phone: (713) 554-2377
                            Fax: (888) 995-3335


                            /s/ John P. Kristensen
                            John P. Kristensen—john@kristensenlaw.com
                            Cal. Bar No. 224132 (Pro Hac Vice Pending)
                            KRISTENSEN WEISBERG, LLP
                            12540 Beatrice Street, Ste. 200
                            Los Angeles, CA 90066
                            Phone: (310) 507-7924
                            Fax: (310) 507-7906

                            **ATTORNEYS FOR PLAINTIFF
                            AND THE PROPOSED CLASS**